IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

SARAH COWGILL                                    CV 09-1517-MA

          Plaintiff,                             OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

          Defendant.

DAVID B. LOWRY
9900 S.W. Greenburg Road
Portland, OR 97223
(503) 245-6309

          Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1  - OPINION AND ORDER

LEISA A. WOLF
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2531

    Attorneys for Defendant

MARSH, Judge.

    Plaintiff Sarah F. Cowgill seeks judicial review of the Commissioner's final decision denying her February 24, 2006, application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-34.

    For the following reasons, I **REVERSE** the Commissioner's final decision denying plaintiff's DIB claim, and remand this matter for the payment of benefits as set forth herein.

    Plaintiff was 61 years old on the date the Commissioner issued his final decision.  In her DIB application, plaintiff claimed she has been disabled since January 1, 1997, because of chronic back and neck pain, knee tendonitis, and foot pain.  The Administrative Law Judge (ALJ) held a hearing on July 14, 2009, at which Plaintiff declined to appear despite being aware that the ALJ required her appearance.  Instead, plaintiff submitted a letter from a doctor asserting she was unable to attend the hearing because of physical pain she would suffer during the one hour drive to the hearing and her inability to stand during the

2  - OPINION AND ORDER

hearing.  Accordingly, the only witness who testified at the hearing was clinical psychologist John Crossen, Ph.D.

At the close of the hearing, the ALJ asked plaintiff's counsel whether plaintiff would submit to a psychological examination by a consulting psychologist located in her neighborhood.  A date was set for the examination but plaintiff again declined to attend.

On August 26, 2009, the ALJ issued a decision that plaintiff was not disabled.  The ALJ found the evidence did not establish plaintiff suffers from physical pain sufficient to preclude her from engaging in "basic work activities."  The ALJ also found that although the record reflects plaintiff has "a number of psychological impairments," the medical record does not include any evidence that plaintiff has functional limitations that are related to those impairments.

The ALJ rejected plaintiff's reasons for not attending the hearing or participating in the consultative psychological examination.  The ALJ further found plaintiff was intentionally non-cooperative.

Plaintiff timely appealed the ALJ's decision to the Appeals Council.  On November 23, 2009, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, became the Commissioner's final decision for purposes of review.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987). <u>See also</u> 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff did not engage in substantial gainful activity from the alleged onset date of her disability, January 1, 1997, through December 31, 1999, the date plaintiff was last insured.

At Step Two, the ALJ found plaintiff's alleged physical and psychological impairments or combination of impairments were not severe and did not significantly limit plaintiff's ability to perform basic work-related activities for 12 consecutive months. <u>See</u> 20 C.F.R. §404.1521 (a severe impairment or combination of impairments is one that significantly limits an individual's physical or psychological ability to do basic work activities).

Based on her Step One and Step Two findings, the ALJ found plaintiff's physical and psychological impairments did not preclude plaintiff from engaging in substantial gainful activity as of the date she was last insured. Accordingly the ALJ found plaintiff was not disabled and, therefore, not entitled to DIB.

## **ISSUE ON REVIEW**

Plaintiff contends the ALJ's finding that she does not have a severe psychological impairment is not supported by substantial evidence.  Accordingly, plaintiff seeks an order reversing the Commissioner's final decision and remanding the matter to the Commissioner for further proceedings during which the ALJ should reassess the severity of plaintiff's physical and psychological impairments after (1) recalling Dr. Crossen as a witness to clarify his testimony at the hearing, (2) recontacting treating physician Allen Stark, M.D., to obtain clarification of his 1998 medical opinion that plaintiff suffered from a chemical imbalance in her brain that limited her ability to work, and (3) exploring whether plaintiff's pain disorder that was first diagnosed in 2001 existed before December 31, 1999, the date she was last insured for disability purposes.

The ultimate issue is whether plaintiff presented evidence sufficient to support her claim that she suffered from physical and/or psychological impairments before December 31, 1999, that prevented her from engaging in substantial gainful activity.

## **LEGAL STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate the inability "to engage in

any substantial gainful activity by reason of any medically determinable physical or psychological impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

6  - OPINION AND ORDER

The decision whether to remand a social security case for additional proceedings or for immediate payment of benefits is within the discretion of the court.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert</u>. <u>denied</u>, 121 S. Ct. 628 (2000).  A case should be remanded for additional proceedings if such proceedings may remedy defects in the original proceeding.  <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).

## **RELEVANT RECORD**

The focus of plaintiff's challenge to the Commissioner's final decision denying her DIB claim is the ALJ's failure to find that plaintiff's psychological impairments are sufficiently severe to meet or equal Listing 12.03 (Schizophrenic, Paranoid and Other Psychotic Disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning).  20 C.F.R. Pt. 404, Subpt. P, App.

The medical record exceeds 800 pages, primarily reflecting the treatment and evaluation of plaintiff's physical ailments. The court, however, focuses on those medical records that address treatment for or evaluation of plaintiff's psychological impairments and the treatment plaintiff received for her claimed physical impairments that might shed light on the severity of those impairments before December 1999, the date she was last insured for purposes of her DIB claim.

## PLAINTIFF'S EVIDENCE

Plaintiff asserts she was unable appear at the evidentiary hearing because of the physical pain she would endure while traveling to and participating in the hearing.  Plaintiff offered the same justification for refusing to attend a post-hearing psychological evaluation ordered by the ALJ.  On the medical record as a whole, I agree with the ALJ that plaintiff did not proffer a credible reason for not participating in either the evidentiary hearing or the psychological evaluation.  As such, the ALJ's finding that plaintiff was a non-cooperative witness is supported by substantial evidence.  Accordingly, the following evidence is drawn from plaintiff's written statements made in support of her claim.

On the hearing date in July 2009, Plaintiff was 51 years old.  She has a high school diploma and one year of college.  Between 1982 and 1996, she worked full-time for various employers as an administrative secretary or bookkeeper/secretary.  During that time-frame, she also engaged in volunteer work.

In March 2006, plaintiff completed a Pain Questionnaire in which she described "burning, pinching, aching, shooting, tight, exhausting and wearing" low back pain that "sear[ed] up [her] back and out [her] arms."  She also felt "intense pressure" when she stood for any period of time.  She also complained of mid/upper-back pain into her neck, knee tendonitis, and foot pain.

8  - OPINION AND ORDER

Her pain continued throughout the day and into the night whenever she moved her upper body, e.g.,. "reaching, pulling, walking, bending, twisting, sitting, standing, lifting, driving," as well as when she vacuumed and scrubbed the floors.  The pain was relieved when plaintiff laid down with her knees over pillows and took muscle relaxants and pain medication.

Plaintiff's medications caused tightness, light headaches, and seizures.  Plaintiff was either no longer able to or had difficulty walking more than 20-30 minutes, sitting for an extended period of time, riding a bicycle, hiking, swimming, driving long  distances, or participating in aerobics and dance activities.  She required assistance cleaning her house and gardening.  She was able to prepare her own meals, which consisted of prepared or canned foods.  She had difficulty carrying grocery bags weighing more than five lbs.

## MEDICAL EVIDENCE

**Medical Treatment.**

In January 1994, plaintiff was treated at the Meridian Park Hospital Emergency Room for low back pain.  An x-ray taken seven months later revealed mild spinal and lateral recess stenosis at L-4 due to mild changes in the facet joints.

From August-December 1994, plaintiff was treated by chiropractor Shawn Harrington, DC, for pain in different areas of her back, but primarily on the lower right side.

In May 1996, Duane Iverson, M.D., treated plaintiff for a right frontal headache that occurred for 2-3 days at a time over a period of several weeks.  Dr. Iverson suspected they were "muscle contraction headaches."

In August-September 1997, plaintiff had abdominal pain.

In March 2000, during a mental health assessment, Plaintiff described suffering from back pain and gastrointestinal problems.

In October 2001, plaintiff was evaluated for a complaint of headaches occurring over a period of "many years" which she described as being triggered by stress, weather changes, and possibly hormones.  She was diagnosed with migraine headaches, depression, and an anxiety disorder v. thought disorder.

In February 2003, plaintiff was treated at the Samaritan North Lincoln Emergency Room complaining of leg weakness.  No cause was found for that complaint, but it was noted that plaintiff was anxious and depressed.  Three months later, at the same facility, plaintiff complained of severe low back pain but denied any prior weakness in a particular limb.  The diagnosis was chronic low back pain.  A thoracic/lumbar spine MRI, however, was normal except for mild narrowing of the central canal and mild posterior displacement of the descending left L5 nerve root.

In September 2005, another MRI of the low back revealed a very mild degree of spinal stenosis and a mild generalized disc bulge at L4-5, a very mild annular bulging disc without evidence

10 - OPINION AND ORDER

of herniation at L3-4, and mild degenerative changes at L5-S1.

In April 2007, Steven McNally, M.D., diagnosed plaintiff as suffering from fibromyalgia.  He noted an MRI of the lower lumber spine at L4-5 showed mild spinal stenosis and degenerative disc disease.

**Psychiatric/Psychological Treatment.**

In June-July 1997, plaintiff was seen at the Providence Health System Crisis Triage Center for paranoid thoughts she was having about co-workers and others, including the fear that she was being followed by "people out to get her."  She no longer trusted family members.  She was tearful and a hereditary trembling problem had increased.

In August 1997, plaintiff was treated at Legacy Health Center for gross motor tremors.  She was "an extremely vague and incomplete historian and really ha[d] no insight into what her underlying problem might be."  The discharge diagnosis was "Acute tremulousness.  Rule out acute psychosis."  During the same time period, she was treated by Dr. Iverson for anxiety (as well as the physical impairments described above).

Three days later, plaintiff was also treated at Good Samaritan Hospital's Emergency Room for a complaint of severe and debilitating anxiety.  On examination, plaintiff was tremulous but alert.  There was no evidence of any cognitive or gross thought disorder and no suggestion of homicidal or suicidal

ideation.  She had "a resting tremor which worsen[ed] with intention."  On discharge, she was diagnosed with severe and debilitating anxiety based on "subjective anxiety [with] no evidence of cognitive or gross thought disorder."

In July-August 1997, plaintiff was also treated on four occasions by psychiatrist Carol Stark, M.D., who diagnosed Psychotic Disorder NOS.  Dr. Stark was unable to opine how long plaintiff had suffered from this impairment.  She prescribed Risperdal to treat plaintiff's psychosis.  Plaintiff was unhappy with the medication and switched to another treatment provider.

From August 1997 through January 1998, plaintiff was treated by psychiatrist Kenneth Stark, M.D., who diagnosed plaintiff as having a "chemical imbalance" in her brain resulting in a limited ability to work.  Dr. Stark recommended that plaintiff undergo vocational rehabilitation to assist her in returning to work.

In September 1997, plaintiff's anxiety was markedly improved after she was prescribed Klonopin and Paxil.

In December 1997, osteopathic physician Paul Aversano, D.O. treated plaintiff for tremors she was experiencing mostly in her right hand.  Dr. Aversano noted the tremors "at times seemed contrived."  He diagnosed a primary psychiatric disorder and recommended stress management and psychiatric care.

From March-August 1998, plaintiff sought counseling for her anxiety complaints at Samaritan Counseling Center.  Based on an

assessment that included MMPI testing, psychologist Douglas G. McClure, Psy.D., diagnosed major depression, moderate, recurrent; general anxiety disorder, and delusional disorder.

In March 2000, plaintiff's mental health was assessed at Luke-Dorf, Inc., a community mental health agency.  Plaintiff was diagnosed with Schizophrenia, undifferentiated, r/o Psychosis NOS with isolated and paranoid features, r/o Schizophrenia, Paranoid type.  Plaintiff was assigned a GAF score of 45 (a serious impairment in occupational functioning).

**Psychiatric/Psychological Consultation.**

In May and September 2006, respectively, psychologists Frank Lahman, Ph.D., and Dorothy Anderson, Ph.D. separately reviewed plaintiff's medical records during the period before December 31, 1999, the date plaintiff was last insured.  They each opined that plaintiff suffered from a delusional disorder before December 31, 1999, and that the medical evidence was insufficient to determine whether plaintiff had functional limitations that would impair her ability to engage in substantial gainful activity.

At the hearing in July 2009, the ALJ asked clinical psychologist John Crossen, Ph.D., whether plaintiff's medical records supported a finding that for "the period January 1, 1997, and December 31, 1999," there was sufficient evidence for him to determine whether plaintiff had a condition that met or equaled Mental Health Listing 12.03 - Schizophrenic, Paranoid, or other

13 - OPINION AND ORDER

Psychotic Disorders, for at least two years. Dr. Crossen at first noted the record was "sparse" and it did not "directly address employability." He then opined, however, that:

> as a clinician, when I see these kinds of symptoms lasting . . . for this long . . . I am saying I do feel that this is a condition that, you know, <u>definitely</u> [] would meet the listing criteria.

(Emphasis added]. Dr. Crossen also opined that despite their paucity, the medical evidence supported a finding that plaintiff would have experienced marked difficulty in maintaining social functioning and moderate to marked difficulty in maintaining concentration, persistence, or pace from at least mid-1997 through March 2000. Dr. Crossen, however, opined that the medical record was insufficient to determine the severity of plaintiff's mental health impairments after March 2000.

## DISCUSSION

As noted, plaintiff urges the court to remand this matter for the purpose of (1) recalling Dr. Crossen as a witness to clarify his testimony at the hearing, (2) recontacting treating physician Allen Stark, M.D., to obtain clarification of his 1998 medical opinion that plaintiff suffered from a chemical imbalance in her brain that limited her ability to work, and (3) exploring whether plaintiff's pain disorder first diagnosed in 2001 existed before December 31, 1999, the date she was last insured for disability purposes.

14 - OPINION AND ORDER

On the above record, I conclude a remand for further proceedings would not be productive. Dr. Crossen's testimony is sufficiently clear and firm to support a finding that plaintiff suffered from Listed Impairment 12.03 for at least two years from mid-1997 through December 31, 1999, the date she was last insured. Clarification of his testimony is unnecessary. Based on that conclusion, I also conclude there is no need to clarify Dr. Stark's diagnosis that plaintiff had a "chemical imbalance" in her brain during the same time-frame. Finally, I conclude no useful purpose would be served by clarifying the extent of plaintiff's pain disorder before December 31, 1999, the date she was last insured, because the medical record does not, in any event, support a finding that plaintiff was unable to work before December 31, 1999, because of pain.

<u>**CONCLUSION**</u>

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is **REVERSED** and this action is **REMANDED** for the payment of DIB in accordance with this Opinion.

IT IS SO ORDERED.

DATED this  1  day of December, 2010.


      /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge


15 - OPINION AND ORDER